## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUANE & VIRGINIA LANIER TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>SANDRIDGE MISSISSIPPIAN TRUST I, et al.,<br><br>          Defendants. | Miscellaneous Action No. 18-519<br><br>(Related to Civil Action No. 5:15-cv-00634-G, W.D. Okla.)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS** |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     FACTS AND BACKGROUND ................................................................ 2

    A.      Facts of the Case .......................................................................... 2

    B.      The Banks Respond to Plaintiffs' Subpoenas with Deficient
Productions ................................................................................... 5

    C.      Relief Requested by This Motion ................................................. 7

    D.      Plaintiffs Propose Targeted Searches of the Emails of Custodians
Likely to Possess Relevant Information ....................................... 7

        1.      Plaintiffs seek documents that are relevant and necessary ................. 8

        2.      Plaintiffs' search parameters are narrowly targeted ........................... 9

III.    ARGUMENT ........................................................................................... 9

    A.      Rule 45 Permits Discovery of Relevant Documents ..................... 9

    B.      Plaintiffs' Proposed Search Parameters Seek Relevant Information ........... 11

    C.      Plaintiffs' Proposed Search Parameters are Proportional to the Needs
of the Case ................................................................................... 13

    D.      The Banks Are Not Disinterested Third Parties and Are Not Entitled
to Cost-Shifting ........................................................................... 17

    E.      The Banks' Purported Objection for Failure to Provide Notice Under
the Local Rules is Misplaced ....................................................... 20

IV.     CONCLUSION ...................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AG Equip. Co. v. AIG Life Ins. Co.*,
    No. 07-CV-556-CVE-PJC, 2008 WL 5205192 (N.D. Okla. Dec. 10, 2008) ................ 10

*Agerbrink v. Model Serv. LLC*,
    No. 14CIV7841JPOJCF, 2017 WL 933095 (S.D.N.Y. Mar. 8, 2017) .................... 14, 15

*Behrend v. Comcast Corp.*,
    248 F.R.D. 84 (D. Mass. 2008) ...................................................................... 19

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017) .................................................................................... 5

*Crandall v. City and Cnty. of Denver*,
    No. 05–cv–00242–MSK–MEH, 2007 WL 162743 (D. Colo. Jan. 17, 2007) .......... 17, 18

*Curtis v. Progressive N. Ins. Co.*,
    No. CIV-17-1076-C, 2018 WL 2976432 (W.D. Okla. June 13, 2018) ........................ 11

*Fosbre v. Las Vegas Sands Corp.*,
    No. 210CV00765APGGWF, 2016 WL 54202 (D. Nev. Jan. 5, 2016) .................... 13, 14

*G & E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*,
    317 F.R.D. 313 (D.D.C. 2016) ...................................................................... 20

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
    No. 05–2164–MLB–DWB, 2007 WL 2122437 (D. Kan. July 20, 2007)...................... 16

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*,
    No. 17-md-2785-DDC-TJJ, 2018 WL 2926581 (D. Kan. June 11, 2018) .............. 10, 11

*In re First Am. Corp.*,
    184 F.R.D. 234 (S.D.N.Y. 1998) .................................................................... 19

*In re Toyota Motor Corp. Sec. Litig.*,
No. CV 10-922 DSF AJWX, 2012 WL 3791716 (C.D. Cal. Mar. 12, 2012) ................. 11

*Jackson Jordan, Inc. v. Kyle Rys.*,
No. 87–1059–C, 1988 WL 236172 (D. Kan. Mar. 23, 1988) ......................................... 19

*Joseph v. Wiles*,
223 F.3d 1155 (10th Cir. 2000) .................................................................................. 5, 6

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ...................................................................................................... 16

*Metzger v. Am. Fid. Assur. Co.*,
No. CIV-05-1387-M, 2006 WL 3097178 (W.D. Okla. Oct. 31, 2006) ......................... 15

*Robinson v. City of Arkansas City*,
No. 10–1431–JAR–GLR, 2012 WL 603576 (D. Kan. Feb. 24, 2012) .......................... 16

*S.E.C. v. Am. Pension Servs. Inc.*,
No. 2:14–cv–00309–RJS–DBP, 2014 WL 5513717 (D. Utah Oct. 31, 2014) .............. 21

*Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*,
No. 2:16-CV-00158 WBS AC, 2018 WL 2981827 (E.D. Cal. June 14, 2018) .............. 18

*Shenwick v. Twitter, Inc.*,
No. 16-CV-05314-JST (SK), 2018 WL 833085 (N.D. Cal. Feb. 7, 2018) ......... 12, 13, 14

*Simms v. Nat'l Football League*,
No. 3:11-CV-0248-M-BK, 2013 WL 11570288 (N.D. Tex. Oct. 22, 2013) .................. 18

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
No. 14CIV9792WHPJCF, 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015) ...................... 10

*Steward Health Care Sys. LLC v. Blue Cross & Blue Shield of R.I.*,
No. 15-272, 2016 WL 8716426 (E.D. Pa. Nov. 4, 2016) .............................................. 20

*Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*,
   No. 12-CIV-81397, 2016 WL 1658765 (S.D. Fla. Apr. 26, 2016) .......................... 17, 19

*Tutor–Saliba v. United States*,
   32 Fed. Cl. 609 (Fed. Cl. 1995) ........................................................................ 19

*U.S. v. Blue Cross Blue Shield of Mich.*,
   No. 10–CV–14155, 2012 WL 4838987 (E.D. Mich. Oct. 11, 2012) ............................ 19

*Wells Fargo Bank, N.A. v. Konover*,
   259 F.R.D. 206 (D. Conn. 2009) ....................................................................... 19

**Rules**

Federal Rule of Civil Procedure 26 ........................................................... 10, 13, 14

Federal Rule of Civil Procedure 45 ............................................................... passim

Lead Plaintiffs Ivan Nibur, Jase Luna, Matthew Willenbucher, the Duane & Virginia Lanier Trust, and Deborah Rath, and Movant Reed Romine (collectively, "Plaintiffs") submit this memorandum in support of their motion to compel non-parties Merrill Lynch, Pierce Fenner & Smith Incorporated ("Merrill Lynch"), Morgan Stanley & Co. LLC ("Morgan Stanley"), and Raymond James & Associates, Inc. ("Raymond James"), and RBC Capital Markets, LLC ("RBC," and collectively, the "Banks") to comply with the respective subpoenas for documents served by Plaintiffs on the Banks in this action. For the sake of convenience, Plaintiffs and the Banks are collectively referred to as the Parties.

## I.    INTRODUCTION

This is a securities class action brought on behalf of investors in two royalty trusts sponsored by SandRidge Energy, Inc. ("SandRidge"): SandRidge Mississippian Trust I and Trust II ("Trust I" and "Trust II"). The Banks underwrote the Trusts' Initial Public Offerings ("IPOs"). Plaintiffs served subpoenas seeking to have the Banks review for production correspondence between a small group of employees during a short period of time, limited to documents that contain narrowly circumscribed search terms. The Banks have refused to review any correspondence. The communications of the specific bankers responsible for the Trusts' IPOs, who reviewed disclosures in the Trusts' IPO documents which Plaintiffs allege were misleading, are relevant to this case.

Plaintiffs offered to pay 25% of the Banks' costs of compliance with the subpoenas, excluding attorneys' fees. The Banks did not make a counterproposal. The Court should not order anything more. The Banks are not strangers to this litigation. In fact, the Banks

1

were defendants in this action until the Supreme Court reversed long-standing Tenth Circuit precedent, allowing the Banks to escape on statute of repose grounds. They have a stake in whether a jury finds that the disclosure documents they attached their names to contained false or misleading statements. The Banks are billion-dollar financial institutions with large compliance departments who can easily absorb the costs of compliance.

Plaintiffs bring this motion after extensive discussions with counsel for the Banks regarding their compliance with Plaintiffs' subpoenas, which the Parties were unable to resolve. The Parties' discussions included numerous email and letter correspondence and two telephone conferences, as well as one in-person conference.

The Court should order the Banks to search for and produce responsive documents using the search parameters set out in Exhibit 1 to the Declaration of Jonathan Horne ("Horne Dec."), filed herewith.

## II. FACTS AND BACKGROUND

### A. Facts of the Case

The Trusts own royalty interests in oil and gas wells operated by SandRidge in a geological formation in Oklahoma and Kansas known as the Mississippian Formation. ¶4.[1] The royalty interests entitle the Trusts to a percentage of the revenue generated by the sale of oil and gas produced by those wells. *Id.* The initial public offerings for the Trusts together generated over $900 million in proceeds. ¶¶14, 24. Raymond James and Morgan Stanley acted as co-lead underwriters and representatives for the underwriters in

---

[1] References to "¶__" are to paragraphs of Plaintiffs' Consolidated Amended Complaint for Violations of the Federal Securities Laws (Dkt. No. 78, "Complaint").

connection with both of the Trust IPOs, and helped draft and disseminate the Prospectuses for both IPOs. ¶¶54-55. Merrill Lynch acted as a co-lead underwriter and served as a representative for the underwriters in the Trust II IPO, and helped draft and disseminate the Prospectus for the Trust II IPO. ¶56. RBC served as an underwriter for both Trust IPOs and helped to draft and disseminate the Prospectuses for both IPOs. ¶57.

Trust I's IPO filings represented that the geology of the Mississippian Formation was "well understood" and predictable. ¶¶8, 10. A predictable formation meant predictable production and returns from the wells, and thus predictable distributions to shareholders. But the documents produced by Defendants to date tell a different story – ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████[2]

Trust I's IPO filings also projected that oil sales would represent the bulk of the revenue generated by the wells due to the premium price commanded by oil, as compared to gas. ¶120. Thus the wells' gas-to-oil ratio was particularly important to investors. However, it was clear that actual oil production from the wells was not meeting projections. ¶16. These poor results threatened to derail the $600 million IPO of Trust II that SandRidge had planned for April 2012, which depended on demonstrating the success of the Trust I IPO. ¶23; ████████████████████████████████████████████████ ████████. To conceal the weak oil production and ensure the success of the Trust II IPO,

---

[2] References to "Ex. __" are to the exhibits attached to the Declaration of Jonathan Horne.

Defendants accelerated the drilling of the Trust I wells. ¶18. This enabled Defendants to increase the aggregate oil production while masking the poor oil production rates of the individual wells. *Id.* Additionally, in a series of conference calls with analysts in 2011 and early 2012, Defendants made several false and misleading statements, and omitted certain material facts, concerning the poor oil production of the Trust I wells. ¶¶307-329. In doing so, Defendants artificially inflated the price of the Trust I units, allowing SandRidge to complete the Trust II IPO and sell most of the Trust I units it held.

A series of corrective disclosures beginning on November 9, 2012 leaked the truth to the market and removed the artificial inflation from the price of the Trust units. First, SandRidge disclosed that its wells in the Mississippian Formation held far less oil than Defendants had previously led the market to believe. ¶25. Second, in their quarterly reports following SandRidge's admission, the Trusts each reported dismal results due to poor oil production. ¶26. Third, a series of analysts employed by the firms that had underwritten the Trusts' IPOs reduced their price targets for the Trust units – an exceptionally bad sign. ¶¶27-29. These corrective disclosures caused Trust I and Trust II unit prices to fall by $8.23 and $8.26, respectively. *Id.*

The Banks are not strangers to this litigation. As required by the securities laws, the Trusts' IPOs were conducted pursuant to Registration Statements and Prospectuses, which the Banks helped to draft and disseminate. The Banks sold the Trust IPO units to their customers, and the Prospectuses' front covers prominently feature the Banks' names. Exs. 5-6.

Sections 11 and 12 of the Securities Act of 1933 make underwriters liable for damages caused by false or misleading statements in registration statements and prospectuses. Plaintiffs asserted claims under Sections 11 and 12 against the Banks, ¶¶264-281, who litigated this case for over nine months, fully briefing a motion to dismiss Plaintiffs' claims asserted against them. Dkt. Nos. 95, 116. After fully briefing the motion, the Supreme Court decided a case, *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2044 (2017), which abrogated a long-standing Tenth Circuit case, *Joseph v. Wiles*, 223 F.3d 1155, 1157 (10th Cir. 2000), and retroactively determined that this action was untimely when filed. After Plaintiffs conceded that the new Supreme Court case could not be distinguished, Judge Miles-LaGrange dismissed Plaintiffs' Securities Act claims without opining on the merits, and dismissed the Banks as defendants. Dkt. No. 129.

**B.      The Banks Respond to Plaintiffs' Subpoenas with Deficient Productions**

On April 21, 2018, Plaintiffs served the Banks with subpoenas to produce documents pursuant to Rule 45.[3] *See* Exs. 7-10 (copies of the subpoenas). After the Banks served their responses and objections, the Parties conferred by telephone. Horne Dec. ₱ 3. During this conference, Plaintiffs explained what types of documents were relevant and why they were seeking those documents from the Banks. *Id.* The Banks requested that Plaintiffs propose custodians and search terms for the Banks to use in their search for documents responsive to Plaintiffs' subpoenas. *Id.* A week later, Plaintiffs provided

---

[3] Raymond James was originally served with a subpoena addressed to its Florida office, and was later re-served with a subpoena addressed to its New York office on May 1, 2018. RBC was served on May 10, 2018.

explanations for why each of three categories of documents were relevant, and proposed custodians, search terms, and time periods tailored to each. Ex. 11.

The Parties then agreed that the Banks would make an initial production of certain due diligence materials located on a central location on the Banks' servers. The Banks agreed to produce due diligence materials related to the Trusts' IPOs and public analyst reports from their respective research teams related to the Trusts, but rejected Plaintiffs' proposed search parameters outright without offering a counterproposal. Ex. 12. In June and July, the Banks produced the due diligence materials and public analyst reports, which Plaintiffs reviewed. Horne Dec. ¶ 4.

In mid-August, Plaintiffs identified to the Banks concrete categories of documents responsive to Plaintiffs' subpoenas which the Banks had not yet produced. Ex. 13. Plaintiffs also supplied rationale for why each category of documents was responsive, as well as carefully tailored lists of custodians, search terms, and time periods. *Id.* The Banks once again rejected Plaintiffs' proposed search parameters without offering a counterproposal. Ex. 14. The Banks refused to produce any additional documents and requested that Plaintiffs pay all costs of searching, reviewing, and producing the requested documents. *Id.*

After a further exchange of letters, the parties met and conferred in person on September 18, 2018. Horne Dec. ¶ 5. Among other things, Plaintiffs offered to cover 25% of the costs of production, excluding attorneys' fees. *Id.* The Banks stated that they would respond to Plaintiffs' proposal by the next week, but did not do so until October 25, after multiple prompts from Plaintiffs. *Id.* At that time, the Banks continued to refuse to produce

6

any further responsive documents, rejected Plaintiffs' cost-sharing proposal and provided no further reasoning. Ex. 15.

After roughly six months of detailed negotiations, Plaintiffs and the Banks have been unable to resolve this matter.

### C.   Relief Requested by This Motion

By this Motion, Plaintiffs seek an order compelling the Banks to: (a) search for and review documents in their possession, custody or control using the search parameters proposed by Plaintiffs; and (b) produce to Plaintiffs documents identified during that search which are responsive to Plaintiffs' subpoenas. The search parameters Plaintiffs propose are set out in Exhibit 1 hereto.[4]

### D.   Plaintiffs Propose Targeted Searches of the Emails of Custodians Likely to Possess Relevant Information

Plaintiffs propose custodians, search terms, and time periods narrowly targeted to identify responsive documents in each category. The documents Plaintiffs seek pertain to (1) discussions of pricing of Trust units during roadshows and over the span of the IPOs; (2) investor considerations related to the IPOs; and (3) additional documents concerning the Banks' due diligence.

---

[4] In Exhibit 1, Plaintiffs have added one proposed custodian for RBC to the list of custodians Plaintiffs had previously proposed to the Banks. RBC is represented by the same counsel as the other Banks, the parties' discussions preceding this motion apply equally to RBC, and the Court should compel RBC to comply with the subpoenas for the same reasons as the other Banks, as set forth in this motion.

*1.      Plaintiffs seek documents that are relevant and necessary*

Documents involving discussions of pricing during roadshows and over the span of the IPOs are relevant to, among other things, the efficiency of the markets for Trust units in the IPOs, which Plaintiffs will use to show class-wide reliance. Documents showing investor considerations in the IPOs are relevant to the materiality of the information set out in the Trusts' Registration Statements and Prospectuses and the information omitted or communicated to investors about the Trusts and the IPOs. Likewise, questions from investors are relevant to any truth-on-the-market defense that Defendants may raise. These documents may also be relevant to showing Defendants' scienter. The initial production did not include this information. ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████

Further documents and correspondence concerning the Banks' due diligence are also relevant to proving the falsity of Defendants' statements and their scienter in making the statements. ██████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████ In conducting their due diligence for the IPOs, the Banks would have obtained copious information and representations from Defendants. The Banks' internal communications and notes are relevant to showing Defendants' scienter, but would not be available from Defendants through party discovery.

2.      *Plaintiffs' search parameters are narrowly targeted*

After extensive negotiations, Plaintiffs proposed a limited set of custodians and search terms, constrained to very narrow periods of time. Plaintiffs designed their search parameters to identify responsive documents efficiently, in an effort to lessen the burden on the Banks. The Banks have not offered any counterproposals, repeatedly rejecting Plaintiffs' proposals outright with only generalized claims of overbreadth and undue burden.

As outlined in Exhibit 1, Plaintiffs propose 14 total custodians between the four Banks for search terms pertaining to Trust I, and only four additional custodians for Trust II, out of dozens of potential custodians at the Banks who were involved with the Trust IPOs. Plaintiffs propose mere four-month periods around each of the Trust IPOs for search terms which require ***both*** a term limiting documents to those pertaining to SandRidge ***and*** one of five narrow terms (pric!, demand, book, diligence, questionnaire). Plaintiffs also propose extremely narrow periods of 2-3 ***weeks*** around the IPOs with slightly broader search terms that are nonetheless limited to documents relating to SandRidge. Plaintiffs' proposed parameters are narrowly designed to target relevant, responsive documents from a limited set of custodians over very specific time frames, and thus impose no undue burden on the Banks.

## III.   ARGUMENT

### A.      Rule 45 Permits Discovery of Relevant Documents

Pursuant to Rule 45, non-parties may be required to produce documents in their possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). Rule 45 permits the party

that served the subpoena to move the court for the district where compliance is required for an order compelling production sought by the subpoena. Fed. R. Civ. P. 45(d)(2)(B)(i). *See also* Fed. R. Civ. P. 37(a)(2).

"The scope of discovery under a subpoena is the same as party discovery." *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 2926581, at *2 (D. Kan. June 11, 2018).[5] "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* While discoverable documents must be relevant to a party's claims or defenses, "[a]t the discovery phase of litigation 'relevancy' is broadly construed and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *AG Equip. Co. v. AIG Life Ins. Co.*, No. 07-CV-556-CVE-PJC, 2008 WL 5205192, at *1 (N.D. Okla. Dec. 10, 2008).[6]

Moreover, "[w]hen the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned

---

[5] Unless otherwise indicated, internal citations and quotations are omitted and emphasis is added.

[6] The 2015 amendments to the Federal Rules of Civil Procedure had no impact on the scope of relevance, as noted by Magistrate Judge James Francis. *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14CIV9792WHPJCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015).

by discovery would outweigh the ordinary presumption in favor of broad disclosure." *EpiPen*, 2018 WL 2926581 at *2. The Banks have not met their burden of establishing the lack of relevancy or that relevancy is marginal and outweighed by potential harm or burden.

In considering a motion to compel a non-party to produce documents the Court must also "consider the burden on the nonparty, relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request." *Curtis v. Progressive N. Ins. Co.*, No. CIV-17-1076-C, 2018 WL 2976432, at *1 (W.D. Okla. June 13, 2018). Finally, the party responsible for issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Here, Plaintiffs have negotiated in good faith, offered to significantly limit their proposed search parameters, and offered to pay a portion of the Banks' costs, all in an effort to avoid imposing undue burden on the Banks.

## B.    Plaintiffs' Proposed Search Parameters Seek Relevant Information

As noted above, Plaintiffs' proposed search parameters seek documents that are relevant to Plaintiffs' claims because the documents sought would help to establish elements of Plaintiffs' claims against Defendants. Plaintiffs must prove, among other things, the critical elements of scienter, falsity and materiality. A document that reveals that a Defendant's statements are false or material – even if the Defendant did not know of its existence, much less possess it – is plainly relevant to the parties' claims or defenses, because it establishes elements of Plaintiffs' cause of action. *In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922 DSF AJWX, 2012 WL 3791716, at *9 (C.D. Cal. Mar. 12, 2012) (discovery must focus not only on scienter but also on material falsity of statements, as

well as loss causation and damages). Plaintiffs' subpoenas seek documents which may expose the falsity of Defendants' statements, evidence their importance to investors, or demonstrate Defendants' knowledge or intent with respect to their alleged fraudulent disclosures.

Specifically, Plaintiffs seek correspondence from the Banks' employees who were involved in the Trust IPOs. This correspondence is highly relevant to showing materiality. The Banks, as underwriters of the IPOs, served as the direct conduits to investors during the offerings. Thus, the Banks would be in an even better position than Defendants to gauge what information was important to investors, including Defendants' false and misleading statements and omissions. Additional documents from the Banks will probably provide evidence not in Defendants' possession that demonstrates materiality.

Even evidence bearing directly on a Defendant's knowledge will not necessarily be memorialized in an email sent to a Defendant. In conducting due diligence, the Banks would have obtained copious information and representations from SandRidge. As is typical for IPOs, the Banks held numerous phone calls, diligence sessions, and other meetings with SandRidge employees. In connection with these calls, the Banks likely exchanged internal emails summarizing the issues discussed or positions taken. For instance, employees of the Banks might record in an email not sent to a Defendant that the employee orally provided relevant information to a Defendant, or that a Defendant said something relevant on a phone call. These types of internal emails are directly relevant to Defendants' knowledge, but would not be in Defendants' possession. *See  Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST (SK), 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018)

12

("one custodian may have created a document, such as handwritten notes, that no other custodian possesses"); *Fosbre v. Las Vegas Sands Corp.*, No. 210CV00765APGGWF, 2016 WL 54202, at *6 (D. Nev. Jan. 5, 2016) (requiring defendant to use as custodian a person who attended meetings with defendant). "It is always possible that one custodian will have a document or documents that other custodians have not retained." *Shenwick*, 2018 WL 833085, at *1.

Moreover, Plaintiffs' narrowly targeted subpoenas are the most efficient method of discovering relevant documents. In conducting due diligence in preparation for the IPOs, the Banks would have spoken to numerous employees in various positions at SandRidge and related parties – far more than the eight custodians whose records Defendants searched in making their production. Defendants' search and production cannot pick up any discussions between the Banks and key SandRidge employees that did not pass through those custodians' emails. A search of the Banks' correspondence would reveal these documents. Additionally, there were comparatively fewer employees involved with the Trust IPOs for the Banks than there were on behalf of SandRidge, so searching a few custodians from the Banks for SandRidge records will be much more efficient than parsing through the emails from many more potential custodians from SandRidge for relevant documents.

### C.    Plaintiffs' Proposed Search Parameters are Proportional to the Needs of the Case

Rule 26 permits discovery that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties'

relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Each of these factors show that Plaintiffs' search parameters are proportional.

The discovery Plaintiffs seek, in the form of the Banks' internal communications, is solely within the Banks' control, and is not publicly available. Although some of the communications may be available from Defendants, there is reason to think certain documents may exist in the sole custody of the Banks. *See Shenwick*, 2018 WL 833085, at *1 ("one custodian may have created a document, such as handwritten notes, that no other custodian possesses"); *Fosbre*, 2016 WL 54202, at *6. As public investors, Plaintiffs do not have any information beyond what they are able to obtain from public sources, conversations with SandRidge former employees, or discovery from Defendants or third parties like the Banks. Like many class actions, this is a classic case of information asymmetry. *Agerbrink v. Model Serv. LLC*, No. 14CIV7841JPOJCF, 2017 WL 933095, at *4 (S.D.N.Y. Mar. 8, 2017).

The Banks are major international financial institutions with hundreds of billions of dollars in assets, and are much better able to bear the costs of searching for, reviewing, and producing these documents than Plaintiffs, who are individuals at or near retirement.

The stakes in this securities fraud class action also support the proportionality of Plaintiffs' proposal. Plaintiffs' expert consultant created a damages model for this action.

Horne Dec. ¶ 6.[7] Based on this preliminary model, Plaintiffs' consultant estimated that total damages for Trust I unitholders were no less than $106.6 million while total damages for Trust II unitholders were no less than $175.7 million, for total damages of no less than $282.3 million. *Id.*

To date, the Banks have offered only generalized assertions that Plaintiffs' proposed search parameters were overbroad and unduly burdensome. They have offered no counterproposals and have not even provided an estimate as to the cost of the proposed searches and production. "Where, as here, a party makes only conclusory allegations of burdensomeness, and provides no detailed explanation, affidavit, or other evidence which demonstrate[s] that providing such information would be burdensome, time-consuming, or expensive, they cannot establish that responding to the discovery request imposes an undue burden." *Metzger v. Am. Fid. Assur. Co.*, No. CIV-05-1387-M, 2006 WL 3097178, at *9 (W.D. Okla. Oct. 31, 2006).

Plaintiffs have repeatedly requested hit counts or an estimate of costs for the search parameters they proposed. Horne Dec. ¶ 8. The Banks have refused to provide an estimate of their burden, or even hit counts for Plaintiffs' proposed search terms. *Id.* Plaintiffs will thus learn of the burden purportedly imposed by their subpoenas at the same time as the

---

[7] To create the model, Plaintiffs' expert first obtained relevant period trading data for Trust I and Trust II units. He then applied generally accepted models of trading behavior to determine the proportion of shares that were traded multiple times. By eliminating such duplicative transactions, Plaintiffs' consultant modeled the number of "damaged shares," *i.e.* shares that were traded during the Class Period and held during each of the corrective disclosures. Total damages are obtained by multiplying, for each corrective disclosure, the number of damaged shares for that corrective disclosure and the total losses attributable to that corrective disclosure, and then adding the total losses. Horne Dec. ¶ 7.

Court, and will respond to the Banks' specific claims of burden in Plaintiffs' reply brief. Similarly, the fact that the Banks produced *some* relevant documents in their initial production does not relieve them of their obligation to conduct reasonable inquiries and produce other plainly relevant documents. *Robinson v. City of Arkansas City*, No. 10–1431–JAR–GLR, 2012 WL 603576, at *4 (D. Kan. Feb. 24, 2012) ("A party does not meet its discovery obligations by sticking its head in the sand and refusing to look for documents."). Also unavailing is the fact that some of the documents Plaintiffs seek from the Banks may also be available from Defendants. *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05–2164–MLB–DWB, 2007 WL 2122437, at *11 (D. Kan. July 20, 2007) ("While some of the same materials may have been produced by [a party] in earlier document productions, this alone does not relieve [the subpoenaed non-parties] of the obligation to search for and produce the requested documents if the documents are in their custody or control.").

The Banks also point to the two pending motions for judgment on the pleadings filed by Defendants in this action (Dkt. Nos. 157, 215) which, if granted, would result in dismissal of this action and would moot Plaintiffs' subpoenas. Defendants' motions will fail because, among other things, Defendants omit and fail to distinguish controlling authority. *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010); *see generally* Dkt. No. 231 (Plaintiffs' opposition). In any event, the Banks have cited no authority, and Plaintiffs have found none, for their novel position that discovery may be limited by an assumption that the Court will grant a pending dispositive motion.

Finally, Plaintiffs have taken great care to limit the burden on the Banks with respect to the subpoenas. Plaintiffs propose mere four-month periods around each of the Trust IPOs. Plaintiffs' proposed terms require ***both*** a term limiting documents to those pertaining to SandRidge ***and*** one of five narrow terms. Plaintiffs have limited their proposed searches to 14 custodians combined from the four Banks out of dozens of potential custodians who were involved with the Trust IPOs. Plaintiffs also propose extremely narrow periods of 2-3 ***weeks*** around the IPOs with slightly broader search terms that are nonetheless limited to documents relating to SandRidge. Plaintiffs' proposed search parameters are highly targeted; the documents the Banks would have to review are focused on only the most relevant custodians and search terms so as to minimize the burden on the Banks, while ensuring Plaintiffs can obtain the responsive, relevant documents they are entitled to.

### D.   The Banks Are Not Disinterested Third Parties and Are Not Entitled to Cost-Shifting

During the Parties' negotiations, the Banks argued that Plaintiffs should pay for the costs of production in connection with the subpoenas. Should the Court grant Plaintiffs' motion to compel, it should not order any such cost-shifting beyond Plaintiffs' reasonable offer to cover 25% of costs, exclusive of attorneys fees.

The intention of Federal Rule of Civil Procedure 45 is to protect disinterested third parties from the burden of litigation. *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CIV-81397, 2016 WL 1658765, at *7 (S.D. Fla. Apr. 26, 2016). The protection of Rule 45 does *not* mean that the requesting party must bear the entire cost of compliance. *Crandall v. City and Cnty. of Denver*, No. 05–cv–00242–MSK–MEH, 2007 WL 162743,

at *1 (D. Colo. Jan. 17, 2007) (reducing the requested reimbursement where the nonparties had an interest in the outcome of the litigation and "a significant ability to readily bear their costs, when compared to two individuals"). In determining to what extent costs should be shifted, if at all, courts consider "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance." *Id.*

A subpoenaed nonparty's interest in the underlying litigation weighs against cost-shifting. *See, e.g., Simms v. Nat'l Football League*, No. 3:11-CV-0248-M-BK, 2013 WL 11570288, at *2 (N.D. Tex. Oct. 22, 2013) ("The Cowboys have an interest in the outcome of this litigation. … Accordingly, this factor weighs against reimbursing the Cowboys.").

The Banks are far from disinterested third parties. The Banks helped to draft and disseminate the Registration Statements and Prospectuses for the Trust IPOs. The Banks sold the IPO shares to their customers, and the Prospectuses' front covers prominently feature the Banks' names. Plaintiffs will seek to convince a jury that these documents, bearing the Banks' names, contained material false and misleading statements and omissions and caused hundreds of millions of dollars in damages to investors. While they will not be liable, the Banks have an interest in not having a jury determine that they conspired with SandRidge to violate the securities laws. Moreover, the two initial public offerings raised more than $900 million, of which the underwriters for the IPOs took home approximately $52 million collectively. *See Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*, No. 2:16-CV-00158 WBS AC, 2018 WL 2981827, at *4 (E.D. Cal. June 14, 2018) ($15,000 in costs not "significant" and thus not worth shifting in light of

18

$400,000 in commissions made by third party). The Banks are major international financial institutions with hundreds of billions of dollars in assets, well-equipped to absorb the costs of production here. *U.S. v. Blue Cross Blue Shield of Mich.*, No. 10–CV–14155, 2012 WL 4838987, at *4 (E.D. Mich. Oct. 11, 2012) (where the nonparty has an interest in the outcome of the case, and each party can equally bear the cost of production, "only a minimal shifting of costs is appropriate").

Awarding all costs of production to a subpoenaed nonparty is inappropriate where the nonparty was "substantially involved in the underlying transaction and could have anticipated that [the transaction would] reasonably spawn some litigation." *In re First Am. Corp.*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998) (quoting *Tutor–Saliba v. United States*, 32 Fed. Cl. 609, 610 n.5 (Fed. Cl. 1995)); *see also Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2009) (denying cost-shifting "based on the Court's finding that KFLP is not a disinterested non-party"); *Behrend v. Comcast Corp.*, 248 F.R.D. 84, 87 (D. Mass. 2008). Where the nonparties were "involved in litigation ... arising out of the same facts," courts have viewed such parties as "not neutral" for purposes of awarding costs. *See Jackson Jordan, Inc. v. Kyle Rys.*, No. 87–1059–C, 1988 WL 236172, at *2 (D. Kan. Mar. 23, 1988).

The Banks already litigated this case as defendants for over nine months, fully briefing a motion to dismiss. In fact, they acted in concert with the remaining Defendants in filing a joint memorandum of law in support of all of the then-parties' motions to dismiss the Securities Act claims. Dkt. No. 95; *Sun Capital*, 2016 WL 1658765, at *8. Plaintiffs' claims against the Banks were not dismissed on the merits, but on statute of repose grounds

19

only after the Supreme Court reversed long-standing Tenth Circuit precedent, retroactively rendering Plaintiffs' claims untimely. The Banks may no longer face liability in this action, but they unquestionably have a stake in whether a jury finds that the disclosure documents they reviewed and attached their names to contained material false or misleading statements.

Finally, the costs of attorney review cannot be shifted. *Steward Health Care Sys. LLC v. Blue Cross & Blue Shield of R.I.*, No. 15-272, 2016 WL 8716426, at *5 (E.D. Pa. Nov. 4, 2016); *G & E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 319 (D.D.C. 2016) (finding that the third party's attorneys' fees for its laborious document review process were not compensable). These costs are exclusively within the producing party's control and are incurred to benefit and protect the interests of the producing party rather than the requesting party. *Id.*

### E.    The Banks' Purported Objection for Failure to Provide Notice Under the Local Rules is Misplaced

During the early stages of negotiations, the Banks purported to raise the objection that Plaintiffs' notice of the relevant subpoenas was not filed at least seven days prior to service of the subpoenas, in violation of Local Civil Rule 45.1(a).[8] However, Local Civil Rule 45.1 is aimed only at the ***parties***. *See* Local Civil Rule 45.1(b) (permitting "any ***party***" to file a motion to preclude service of the subpoena). In any event, once apprised of this inadvertent error, Plaintiffs duly filed notice of the subpoenas. Dkt. No. 204. No party has

---

[8] The Banks do not, and cannot, object that Plaintiffs failed to give prior notice pursuant to Rule 45. Fed. R. Civ. P. 45(a)(4). Plaintiffs served the appropriate notice and copies of the subpoenas on all parties prior to serving the subpoenas.

moved to preclude service of the subpoenas at any point, thus the error is both moot and innocuous. "[A]ny claim of a failure to provide notice is an objection available to a party to the case and not to a non-party who was subpoenaed. Alternatively, any objection that the [non-parties] mount based upon a failure to provide notice was waived to the extent that the [non-parties] responded to the document subpoenas." *S.E.C. v. Am. Pension Servs. Inc.*, No. 2:14–cv–00309–RJS–DBP, 2014 WL 5513717, at *3 (D. Utah Oct. 31, 2014).

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion to Compel as set out above.

Dated: November 13, 2018                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Joshua Baker
Joshua Baker (JB 8288)
Jonathan Horne
Phillip Kim
Laurence M. Rosen
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: jhorne@rosenlegal.com
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

**FARHA LAW, PLLC**
Nicholas G. Farha, OBA #21170
1900 NW Expressway, Suite 501
Oklahoma City, Oklahoma 73118
Telephone: (405) 471-2224
Facsimile: (405) 810-9901
Email: nick@farhalawfirm.com

*Liaison Counsel for Plaintiffs*

**WOHL & FRUCHTER, LLP**
J. Elazar Fruchter
570 Lexington Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 758-4000
Facsimile: (212) 758-4004
Email: jfruchter@wohlfruchter.com

*Additional Plaintiffs' Counsel*

## CERTIFICATE OF SERVICE

I, Joshua Baker, declare that on November 13, 2018, a copy of the foregoing document was served by email and overnight delivery to counsel as provided on the following service list:

| | |
|---|---|
| Kiran A Phansalkar<br>Mitchell D Blackburn<br>**CONNER & WINTERS-OKC**<br>211 N Robinson Ave, Suite 1700<br>Oklahoma City, OK 73102<br>Telephone: 405-272-5711<br>Fax: 405-232-2695<br>Email: kphansalkar@cwlaw.com<br>Email: mblackburn@cwlaw.com | |
| *Attorneys for nominal Defendant Sandridge Energy, Inc* | |
| Ryan S Wilson<br>**WILSON LAW FIRM**<br>PO Box 891390<br>Oklahoma City, OK 73189<br>Telephone: 405-246-0092<br>Fax: 405-246-9652<br>Email: ryan@RSWilsonlaw.com | David B Springer<br>Patrick A Caballero<br>William S Benesh<br>**BRACEWELL LLP**<br>111 Congress Ave, Suite 2300<br>Austin, TX 78701<br>Telephone: 512-472-7800<br>Fax: 800-404-3970<br>Email: david.springer@bracewell.com<br>Email: patrick.caballero@<br>bracewell.com<br>Email: steve.benesh@ bracewell.com |
| *Attorneys for Defendant Sandridge Mississippian Trust I* | |
| Steven M Bauer<br>**LATHAM & WATKINS - SAN FRANCISCO**<br>505 Montgomery St, Suite 2000 | George S Corbyn, Jr<br>Joe M Hampton<br>**CORBYN HAMPTON PLLC**<br>211 N Robinson Ave, Suite 1910 |

<table>
<tr>
<td>

San Francisco, CA 94111
Telephone: 415-391-0600
Fax: 415-395-8095
Email: steven.bauer@lw.com

James C Word
Stephen P Barry
David L Johnson
Norman Anderson
**LATHAM & WATKINS - WASHINGTON**
555 11th St NW, Suite 1000
Washington, DC 20004-1304
Telephone: 202-637-2200
Fax: 202-637-2201
Email: christian.word@lw.com
Email: stephen.barry@lw.com
Email: david.johnson@lw.com
Email: norman.anderson@lw.com

</td>
<td>

Oklahoma City, OK 73102
Telephone: 405-239-7055
Fax: 405-702-4348
Email: gcorbyn@corbynhampton.com
Email: jhampton@corbynhampton.com

</td>
</tr>
</table>

*Attorneys for Defendant Tom L Ward*

<table>
<tr>
<td>

Mark P Gimbel
C William Phillips
Swati R Prakash
**COVINGTON & BURLING-NEW YORK**
620 Eighth Avenue
The New York Times Building
New York, NY 10018
Telephone: 212-841-1000
Fax: 646-441-9161
Email: mgimbel@cov.com
Email: cphillips@cov.com
Email: sprakash@cov.com

</td>
<td>

Thomas B Snyder
**CROWE & DUNLEVY-OKC**
Braniff Building
324 N Robinson Ave, Suite 100
Oklahoma City, OK 73102
Telephone: 405-235-7700
Fax: 405-239-6651
Email: thomas.snyder@crowedunlevy.com

</td>
</tr>
</table>

*Attorneys for Defendants James D. Bennett and Matthew K. Grubb*

John J Clarke, Jr
**DLA PIPER LLP – NEW YORK**
1251 Avenue of the Americas
New York, New York 10020-1104

Telephone: 212-335-4500
Fax: 212-335-4501
Email: john.clarke@dlapiper.com

Andrew R Escobar
**DLA PIPER LLP - SEATTLE**
701 Fifth Avenue
Suite 6900
Seattle, Washington 98104
Telephone: 206-839-4828
Fax: 206-494-1828
Email: andrew.escobar@dlapiper.com

*Attorneys for Non-Parties Merrill Lynch, Pierce Fenner & Smith Incorporated, Morgan Stanley & Co. LLC, Raymond James & Associates, Inc., and RBC Capital Markets, LLC*

Dated: November 13, 2018                    /s/ Joshua Baker_____
                                           Joshua Baker